IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LAEL SAMONTE, #A0078808 | ) | CIV. NO. 05-00507 HG-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| vs. | ) | TO GRANT DEFENDANTS' MOTION |
| | ) | FOR SUMMARY JUDGMENT |
| CLAYTON FRANK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendants' Clayton Frank, Edwin
Shimoda, Shari Kimoto, and Scott Jinbo's Motion for Summary
Judgment ("Motion"). (Doc. No. 69.) This proceeding has been
referred to this court pursuant to 28 U.S.C. § 636(b)(1)(B) &
636(b)(3) and Rule LR72.4 of the Local Rules of Practice of the
United States District Court for the District of Hawaii.
Plaintiff Lael Samonte filed two Oppositions to the Motion,
titled "Plaintiff's Response" on November 15, and 21, 2006.[1]
(Doc. Nos. 79, 90.) Defendants' submitted their Reply on
December 26, 2006. (Doc. No. 92.) This matter is suitable for
disposition without a hearing pursuant to LR7.1(d). For the
following reasons, the court finds and recommends that

---

[1] Because Samonte had an outstanding discovery request, that
the court ordered Defendants to respond to by November 30, 2006,
the original hearing date on the Motion was continued to allow
Samonte time to review Defendants' reply to his request and to
supplement his Opposition to the Motion prior to the hearing. To
date, Samonte has not filed a supplemental memorandum
incorporating the information discovered.

Defendants' Motion for Summary Judgment should be granted.

## PROCEDURAL HISTORY AND BACKGROUND

On August 9, 2005, Samonte, a Hawaii state prisoner, filed this prisoner civil rights complaint pursuant to 42 U.S.C. § 1983. Samonte named as defendants Governor Linda Lingle, Halawa Correctional Facility ("HCF") Warden Clayton Frank, Department of Public Safety ("DPS") Institutions Division Administrator Edwin Shimoda, DPS Mainland Branch Administrator Shari Kimoto, DPS Social Worker IV/Contract Monitor Scott Jinbo, and John Does 1-10 (collectively, "Defendants.").[2] All Defendants were named in their official and individual capacities. Samonte alleges that Defendants harassed, threatened, and ultimately transferred him, from HCF to Arizona, in retaliation for his having filed numerous inmate grievances, complaints, and civil rights lawsuits against prison officials over the past eighteen years.[3] Samonte seeks compensatory and punitive damages and injunctive relief.

The court dismissed Governor Lingle from this action on May

---

[2] Although he filed this action nearly a year ago, Samonte has not moved to name any Doe defendant. Samonte alleges that one of the Doe Defendants is an HCF medical staff member who medically cleared Samonte for transfer to the Mainland; he does not otherwise identify the remaining Doe Defendants, except to allege that they are HCF or DPS employees. He is, however, seeking discovery to determine the identity of the Doe defendants.

[3] Although Samonte was originally incarcerated at the Florence Correctional Center, in Florence, Arizona, he is currently incarcerated at Red Rock Correctional Center, located in Eloy, Arizona.

2

18, 2006. (*See* Doc. No. 47, Findings and Recommendation to Grant

Motion to Dismiss, entered February 24, 2006 ("Feb. 24 F&R"),

adopted May 18, 2006, Doc. No. 59.) Damages claims against all

Defendants in their official capacities, and most of Samonte's

claims for injunctive relief were also dismissed. (*See* Feb. 24

F&R at 6-8.) Specifically, the court dismissed Samonte's prayers

to be transferred back to Hawaii, to prohibit his transfer to

HCF, and to allow him contact visits with his family.[4] (*See id.*)

 On March 22, 2006, the court reiterated its holding that *all*

*Defendants* were entitled to Eleventh Amendment immunities. (*See*

Doc. No. 53, Findings and Recommendation to Grant In Part And

Deny In Part Defendants Frank and Shimoda's Motion to Dismiss,

"March 22 F&R," adopted April 24, 2006, Doc. No. 57.)

In support of their Motion, Defendants argue that (1) Kimoto

and Jinbo are entitled to Eleventh Amendment immunity in their

official capacities; (2) Frank, Kimoto, Jinbo, and Shimoda are

immune from suit for injunctive relief in their official

capacities pursuant to the Eleventh Amendment; (3) Kimoto and

Jinbo are not "persons" in their official capacities under 42

U.S.C. § 1983; (4) Frank and Shimoda are not subject to

---

[4] The only remaining claim for injunctive relief is
Samonte's plea that the court order Defendants to "allow
plaintiff to use his new name for personal safety." (Compl. 13.)
As Samonte did not define this request further, and as this form
of relief appears to have no bearing on his claims that
Defendants retaliated against him, the court did not address this
request for relief.

supervisory liability under § 1983;  (5)  Samonte was transferred

to Arizona due to prison overcrowding, a legitimate penological

interest, and not in retaliation for exercising his

constitutional rights; and (6) all Defendants are entitled to

qualified immunity.

### LEGAL STANDARD

Summary judgment shall be granted when

the pleadings, depositions, answers to
interrogatories, and admissions on file,
together with the affidavits, if any, show
that there is no genuine issue as to any
material fact and that the moving party is
entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56©; *see also Porter v. Cal. Dep't of Corr.*, 419

F.3d 885, 891 (9th Cir. 2005); *Addisu v. Fred Meyer, Inc.*, 198

F.3d 1130, 1134 (9th Cir. 2000).  One of the principal purposes

of summary judgment is to identify and dispose of factually

unsupported claims and defenses.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails

to demonstrate facts to establish what will be an essential

element at trial.  *See id.* at 323.  A moving party without the

ultimate burden of persuasion at trial--usually, but not always,

the defendant--has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.

*Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Cos., Inc.*, 210 F.3d

1099, 1102 (9th Cir. 2000).  The moving party must identify for

4

the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T. W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323).

"When the moving party has carried its burden under Rule 56©), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." *Porter*, 419 F.3d at 891 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003); *Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T. W. Elec. Serv.*, 809 F.2d at 631. In other words,

evidence and inferences must be construed in the light most favorable to the nonmoving party. *Porter*, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. *Id.* However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631.

### DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

I.   All Claims for Damages Against All Defendants in Their Official Capacities Have Been, and Remain, Dismissed.

Defendants argue that damages claims against them in their official capacities must be dismissed. As discussed above, the court has already dismissed *all* damages claims against *all Defendants* named in their official capacities. ( *See* Doc. No. 47, Feb. 24 F&R at 6.) This remains true, whether that dismissal is founded on Eleventh Amendment immunity, *see Doe v. Lawrence Livermore Nat'l Laboratory*, 131 F.3d 836, 839 (9th Cir. 1997) or on the fact that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v.*

*Michigan Dept. of Police*, 491 U.S. 58, 71 (1989).  The court
FINDS that damages claims against all Defendants in their
official capacities have been dismissed by prior order and
RECOMMENDS that Defendants be granted summary judgment
accordingly for all claims for damages in their official
capacities.

II.  The Remaining Claim for Injunctive Relief Should Be
     Dismissed.

     Defendants next argue that Samonte's claims for prospective
injunctive relief must be dismissed.  As discussed *supra* n.3, the
court has already dismissed most of Samonte's claims for
injunctive relief as mooted by his transfer from Hawaii to
Arizona.  (*See* Feb. 24 F&R at 6-8.)  The only remaining claim for
prospective relief, whether that relief is defined as injunctive
or declaratory, is Samonte's request for a court order that
Defendants call him by his "new name."  As noted, Samonte gives
no further facts relating to this request, or what his desired
new name might be, or how being called by a new name would
redress his allegations of retaliatory transfer.

     First, Samonte has made no claim that Defendants have
refused to call him by his "new name."  The first mention of his
desire to be called by a different name surfaces in his request
for relief.  Thus, there is no basis to grant him this requested
relief.  Second, as with his other requests for injunctive or
declaratory relief, he has been transferred, mooting any request

7

that the court order these Hawaii Defendants to call him by his self-proclaimed but unidentified new name at his new prison in Arizona.   There is, consequently, no legal basis to support Samonte's claim for injunctive and declaratory relief on this issue and this prayer for relief must be dismissed as frivolous.

Finally, the court notes that there may be security issues in complying with an inmate's request to be called by a new name, without any supporting documentation that the inmate has legally changed his name.   This type of request is best left to prison officials' discretion, who are in a better position to determine the security needs of the facility in relation to the inmate's request, and the court should not interfere.   *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").   The court FINDS and RECOMMENDS that Samonte has failed to present a genuine issue of material fact regarding this request for relief, and that summary judgment should be granted in Defendants' favor on this claim.

III. Samonte's Claims of Retaliatiatory Transfer.

Samonte claims that Defendants transferred him in retaliation for his filing numerous grievances, civil complaints, and letters to state officials complaining about prison

conditions at HCF during his eighteen years of incarceration there.  In support of his claim for retaliatory transfer, Samonte alleges that he is the only protective custody inmate to have been transferred to a Mainland facility.

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and (4) that such action chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) was not narrowly tailored to advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez,* 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally-protected right, and (2) that the action "advanced no legitimate penological interest").[5]

Prisoners have a constitutionally-protected right to file grievances and to pursue civil rights litigation without fear of

---

[5] Because harm that is more than minimal will always have a chilling effect, an inmate need not expressly allege a chilling effect to state a claim of First Amendment retaliation. *Rhodes*, 408 F.3d at 567 n.11; *Valandingham*, 866 F.2d at 1138. And, conversely, a chilling effect on a prisoner's constitutional right to file grievances is sufficient to raise a retaliation claim against prison officials. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

retaliation.  *Rhodes*, 408 F.3d at 567; *Hines*, 108 F.3d at 267 (prisoner may not be retaliated against for use of grievance system); *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).  A prisoner may not be penalized for the contents of a grievance, *Bradley*, 64 F.3d at 1279, nor may a prisoner be labeled a "snitch" in retaliation for filing grievances, *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989).

It is also well-established that a prisoner cannot be transferred in retaliation for engaging in litigation activity or for exercising his First Amendment rights.  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).  First Amendment retaliation claims are cognizable under § 1983, even though prisoners generally have no liberty interest in a particular cell assignment, a job, or, as in this case, in a particular prison. *Id.* at 806.  Federal courts and federal law take retaliation claims seriously.  Indeed, the Ninth Circuit has held that "the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes."  *Id.* at 806 (citations omitted).  The retaliation cause of action is important enough to sustain validity even though prisoners generally have no constitutionally-protected liberty interest in being held at, or remaining at, a given facility, *see Meachum v. Fano*, 427 U.S. 215 (1976) or in classification status, *see Moody v. Daggett*, 429 U.S. 78 (1976).

The question is whether the allegedly retaliatory act was taken to advance a legitimate penological interest and was narrowly tailored to achieve such goals.

A.   Samonte Fails to Counter Defendants' Legitimate
     Penological Justification for His Transfer.

Defendants provide evidence showing that Samonte was transferred in response to the severe overcrowding at Hawaii's prisons, as recognized by the Hawaii Legislature. (*See* Mot., Kimoto Dec., Ex. 1.)  In 2005, the Legislature appropriated funds for housing up to 1,750 Hawaii inmates in private, Mainland correctional institutions. (*Id.*, Kimoto Dec. ¶ 8.)  Samonte was just one of the many inmates who was transferred pursuant to the Legislature's funding appropriations.  In fact, in June 2005, two months after Samonte's transfer, DPS facilities in Hawaii were still overcrowded, housing 3,931 inmates in facilities with a capacity for only 3,487. (*Id.*, Kimoto Dec., Ex. 1 at 2.)

The DPS promulgated selection criteria to determine which inmates were suitable for transfer to other facilities, based primarily on the requirements of the respective receiving facilities. (Mot., Kimoto Dec., Ex. 1 at 2.)  Kimoto states that she chose Samonte for transfer to Arizona because he met the necessary criteria: (1) he had considerable time left to serve; (2) he had no pending charges against him; (3) he was classified as "close custody," which is the highest level still allowed for transfer; (4) he had a history of escape, and was thus,

ineligible to transfer to any other facility in Hawaii or on the Mainland;[6] and he had been medically cleared for transfer after three years of ineligibility.  (*Id.*, Kimoto Dec. ¶ 15.) Because Samonte met the above criteria, he was cleared for transfer in March 2005.  In short, Defendants have proffered a legitimate, narrowly tailored correctional goal, the reduction of overcrowding in Hawaii's prisons, countering Samonte's claims that his transfer was retaliatory.

Samonte now has the burden of showing that the "substantial" or "motivating" factor behind his transfer was retaliation for the exercise of his protected conduct.  *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  In other words, Samonte has the burden of proving that he would not have been transferred but for the exercise of his constitutionally protected rights.  *Id.; Pratt*, 65 F.3d at 806 ( plaintiff bears

---

[6] Samonte disputes that he has a history of escape, and provides an Expungement Certificate showing that his arrest for Escape 2, on June 22, 1990, has been expunged.  This does not negate, however, the prison's administrative records showing that Samonte escaped from Oahu Community Correctional Center, a fact that Samonte has admitted to in other actions.  *See e.g.*, *Samonte v. Sumner*, Civ. No. 05-00353, Complaint (Doc. No. 1), and Amended Complaint (Doc. No. 11).  Nor does it prove that, although that particular charge of Escape 2 was expunged, he was not convicted of *another* Escape charge that is not represented on the Expungement Certificate.  Moreover, even without a history of escape, Samonte was still be eligible for transfer to a Mainland facility, either in Arizona, or in Mississippi or Oklahoma. His history of escape simply necessitated that he be sent to Arizona, which is the only state that will accept prisoners with escape histories.  (*See* Mot., Kimoto Dec., Ex.)

the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory conduct); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985) (prisoner claiming retaliation for the exercise of his constitutional rights must also establish that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve those goals).

Here, Samonte contends that he was transferred in retaliation for filing 1500 grievances and numerous complaints and lawsuits over the past eighteen years about prison conditions.  Samonte argues, without support, that he was the only protective custody inmate who was transferred, thus, he was singled out for transfer and his transfer was, therefore, retaliatory.  Defendants present evidence, however, showing that Samonte was *not* the only protective custody inmate transferred in the March 28, 2005 movement.  (Reply, Kimoto Dec. ¶ 19.)  Kimoto states that she also selected protective custody inmate Derrick Smith for transfer during the March 28, 2005 movement.  (*Id.*) Defendants also show that there is a system in place to accommodate the special needs of protective custody and administrative segregation inmates during their transfer.  These inmates are separated from other inmates during their transport to the airplane, while on the airplane, when they arrive at their destination, and upon their incarceration at their respective

Mainland facilities.  (Reply, Kimoto Dec. ¶ 5(h-j).) The
implementation of this system is strongly, although
circumstantially, supportive of Defendants' assertion that
Samonte was not the only protective custody inmate to have been
transferred from Hawaii to the Mainland.

Samonte has failed to present competent evidence tending to
show that his transfer was retaliatory and not necessitated by
overcrowding in Hawaii's prisons, and the Legislature's
appropriation of funds to alleviate this overcrowding, and
Samonte's eligibility for such a transfer.  Samonte makes only
broad, conclusory assertions that, because he was transferred, it
must have been in retaliation for filing grievances and lawsuits.
The court finds that Samonte has failed to sufficiently allege a
causal link between his grievance and lawsuit activities and his
transfer.  The simple fact that Samonte was transferred, during a
time when Hawaii was experiencing prison overcrowding, and after
he had finally been medically and administratively cleared for
such a transfer, is insufficient to establish a retaliatory
purpose or to counter Defendants' proffered non-retaliatory
reason.  *See Mt. Healthy*, 429 U.S. at 285-87 (holding that a
prisoner must establish that the protected conduct was a
substantial or motivating factor for the alleged retaliatory
acts).  The State's interest in relieving prison overcrowding
clearly serves a legitimate penological interest.

14

In addition, Samonte fails to allege any facts demonstrating that the exercise of his First Amendment rights have been chilled.  "Intent to inhibit speech, which 'is an element of the claim' can be demonstrated through direct or circumstantial evidence." *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999).  "Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in protected activity," (*id.* at 1300), however, a plaintiff "does not have to demonstrate that his speech was *actually* inhibited or suppressed." *Rhodes*, 408 F.3d at 569 (emphasis added).  "Circumstantial evidence of intent is sufficient to survive summary judgment motion." *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1448 (9th Cir.1997).

Even circumstantially, however, Samonte has failed to establish all of the elements necessary to support a First Amendment retaliation claim.  First, as discussed above, the evidence presented shows Defendants transferred Samonte to Arizona to alleviate overcrowding and because he met the eligibility requirements.  Samonte presents nothing to show that this proffered reason is either pretextual or not a legitimate response to a pressing penological need.  Second, since his allegedly retaliatory transfer in March 2005, Samonte has filed

15

eight federal lawsuits.[7]  While this, standing alone, cannot be used as direct evidence that Samonte's First Amendment rights were not chilled, it provides strong circumstantial evidence that Samonte has been well-able to continue his litigation activities against the prison, and that there has been no chilling effect on that activity by the transfer.

Furthermore, even though Samonte filed numerous grievances and complaints, he fails to present any connection between the grievances and complaints he filed and his alleged retaliatory transfer.  There is no suspicious timeline or other evidence suggesting that Samonte's transfer was retaliatory.  Samonte admits that during the past eighteen years he had filed more than 1500 grievances, and court records show that Samonte had filed at least eleven civil rights complaints in this court during that same time, and prior to his transfer.  *See* U.S. Party/Case Index, PACER Service Center, available at http://pacer.psc.uscourts.gov.  ("Pacer").  Yet at no time during those years did Defendants move to transfer Samonte, although DPS has been transferring prisoners to the Mainland for

_____

[7] *See* (1) *Samonte v. Bauman, et al.*, Civ. No. 05-00309, filed May 6, 2005; (2) *Samonte v. Sumner, et al.*, Civ. No. 00353, filed May 26, 2005, (3) *Samonte v. Frank, et al.*, Civ. No. 05-00507; (4) *Samonte v. Bennett, et al.*, Civ. No. 05-00545; (5) *Samonte v. Ahn, et al.*, Civ. No. 06-00122, filed March 1, 2006; (6) *Samonte v. Beaver, et al.*, Civ. No. 06-00257, filed May 16, 2006; (7) *Samonte v. Ancheta*, Civ. No. 06-00282; and (8)the present action.

16

many years prior to 2005.  Samonte fails to contradict the evidence in the record that he was transferred in response to overcrowding and due to his eligibility for transfer.

Taken together, Defendants' evidence that the transfer was motivated by overcrowding at the prison, and the circumstantial evidence of Samonte's obvious unhindered ability to continue litigating prison conditions, Samonte has failed to present a genuine issue of material fact that transfer was not motivated by a legitimate correctional purpose.  Therefore, the court finds that Samonte has not met his burden.  His failure to do so is fatal to his claim of retaliation. Without evidence of all five elements, Samonte cannot succeed in establishing "a viable claim of First Amendment retaliation." *Rhodes*, 408 F.3d at 567. Accordingly, this court FINDS and RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED.

IV.  **Samonte Also Fails to Show Frank's, Shimoda's, and Jinbo's Personal Involvement in his Transfer.**

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  When determining causation, the court "must take a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988).

A.   Frank and Shimoda are Entitled to Summary Judgment
     in their Individual Capacities.

A plaintiff may not subject supervisory defendants to
vicarious liability on the basis of *respondeat superior*.  *See*
*Bibeau v. Pac. Nw. Research Found.*, 188 F.3d 1105, 1114 (9th
Cir. 1999); *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir.
1991) (42 U.S.C. § 1983 action).  Liability may be imposed on
supervisory defendants only if the supervisor personally
participated in the deprivation of constitutional rights or if
there was a sufficient causal connection between the alleged
wrongful conduct and the violation.  *See Mackinney v. Nielsen*,
69 F.3d 1002, 1008 (9th Cir. 1995).  A supervisor may also be
held liable if he or she implemented "a policy so deficient that
the policy itself is a repudiation of constitutional rights and
is the moving force of the constitutional violation."  *Redman v.*
*County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (*en*
*banc*) (internal citations and quotations omitted).  However, an
individual's "general responsibility for supervising the
operations of a prison is insufficient to establish personal
involvement."  *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir.
1987).

Frank and Shimoda argue that they, as administrators at HCF
and the DPS respectively, did not personally participate in any
decisions resulting in Samonte's transfer, and that they cannot,

18

therefore, be held liable for his claims of retaliation.  Frank and Shimoda submit their sworn declarations stating that they were not personally involved in Samonte's transfer to Arizona. They assert that they did not screen Samonte for transfer, personally and specifically direct his transfer, or have personal knowledge regarding his transfer or the circumstances surrounding it.  Kimoto also states that she alone screens and selects inmates for transfer.  Moreover, Shimoda and Frank argue, accurately, that Samonte has not alleged their personal involvement and participation in his transfer, other than his conclusory accusations that, because they were, or should have been, aware of the many grievances and lawsuits that Samonte pursued while he was incarcerated at HCF, they must have been responsible for having him transferred.

In his two Oppositions to the Motion, Samonte argues that because Frank and Shimoda were aware of his many lawsuits and grievances, some of which had been filed against them in particular, they are personally responsible for his allegedly retaliatory transfer.  Samonte cites to numerous out-of-circuit cases in support of his theory that Shimoda and Frank are liable for his allegedly retaliatory transfer simply because they knew of his litigious history.  First, a careful review of these cases shows that they do not, in fact, impose supervisor liability on a defendant who had no personal involvement, either

in the alleged violations themselves, or by instituting a deficient prison policy or procedure leading to a violation.[8] Second, Samonte presents no competent evidence refuting Shimoda's or Frank's statements that they were not involved in his transfer, other than his conclusory allegations, which are insufficient to assign personal liability to Shimoda and Frank.

      B.   Samonte Fails to Show Jinbo's Personal Involvement in His Transfer.

Similarly, Jinbo declares that his only involvement with Samonte's transfer was that on March 28, 2005, he brought Samonte a transfer slip notifying Samonte that he had been

---

[8] Samonte cites: *Cox v. Treadway*, 75 F.3d 230, 236-37 (6th Cir. 1996) (direct appeal of an excessive force by police suit, with no discussion of supervisory liability or retaliation other than clarification of a jury instruction on a police officer's duty to intervene when present during an assault of a detainee); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) (same); *Harris v. Chanclor*, 537 F.2d 203, 206 (5th Cir. 1976) (supervisor liability attached when inmate was beaten in warden's presence); *Curtis v. Everette*, 489 F.2d 516, 520 (3d Cir. 1973) (upholding district court's dismissal of supervisory defendants, on a motion to dismiss standard, where prisoner failed to make specific allegations of their knowledge or participation in the alleged deprivation); *Maxwell v. Mason*, 668 F.2d 361, 365-66 (8th Cir. 1981) (finding that prison supervisor was liable when he was personally aware of unconstitutional conditions of confinement and failed to act); *McClelland v. Facteau*, 610 F.2d 693, 695-96 (10th Cir. 1979) (stating that supervisors "must have participated or aquiesced in the constitutional deprivations of which complaint is made[,]" and finding that police supervisors breached their duty to train and supervise). (Samonte also cited several out-of-circuit district court cases, that the court did not review.) These cases are factually inapposite to the instant case and do not support Samonte's argument that Frank and Shimoda are liable for his allegedly retaliatory transfer based simply on their knowledge that he had earlier filed grievances and lawsuits.

selected for transfer from HCF due to overcrowding, which
Samonte refused to sign.  (Jinbo Dec. ¶ 8 & Ex. 1; *see also*
Compl.8 ¶ 10.)  Likewise, Samonte's Complaint provides no other
details regarding Jinbo's participation in his transfer.  Jinbo
avers that he did not personally participate in the screening of
any HCF inmates, including Samonte, to determine their transfer
eligibility, or in the decision to transfer specific inmates.
(Jinbo Dec. ¶ 8.)

In his November 21, Memorandum in Opposition to Defendants'
Motion, Samonte argues that "when defendant Jinbo went to
Plaintiff's cell and ask[ed] him to sign the transfer notice
which Plaintiff had refused.  That should be taken as
participation in the screening of any inmates at HCF, including
Plaintiff, for possible transfer FCC in March 2005."  (Samonte's
Nov. 21, 2005 Response at 6.)  Samonte argues that the court
should take Jinbo's statement as a "perjured declaration," but
provides nothing to support this argument.[9]  (*Id.* 7.)   In

---

[9] Samonte also argues that Jinbo denied him due process when
he did not allow Samonte a hearing to contest his transfer, but
simply asked that he sign the transfer request.  This allegation
is completely frivolous, and clearly outside the confines of the
Complaint.  First, Jinbo was simply delivering the notice of
transfer to Samonte; in his position as an assistant Mainland
Branch Contract Administrator it does not appear that he has the
authority to grant or deny Samonte a hearing for this or any
other reason.  Second, Samonte has never alleged that Jinbo or
anyone else at the prison denied him his right to due process in
connection with his transfer.  Third, Samonte has no liberty
interest in remaining in the prison of his choice, *see Olim v.
Wakinekona*, 461 U.S. 238, 245 (1983), thus he had no right to a

short, Samonte provides nothing linking Jinbo to an alleged decision to transfer Samonte in retaliation for having filed grievances and lawsuits.

Even crediting Samonte's claims that Frank, Shimoda, and Jinbo knew or should have known about Samonte's and other inmate's transfers to the Mainland, or that these Defendants knew of Samonte's litigious history, Samonte still provides nothing showing that Frank, Shimoda, or Jinbo were personally involved in choosing him to be transferred to Arizona, or that they did so in retaliation for his filing lawsuits and grievances. Their supposed knowledge that Samonte was being transferred, which Samonte has not proven, does not translate into their specifically directing his transfer in retaliation for his filing grievances or lawsuits. Samonte's bare suppositions fail to sufficiently allege a causal link between Samonte's grievance and lawsuit activities and Frank, Shimoda, and Jinbo's alleged involvement in his transfer. The court FINDS and RECOMMENDS that Defendants Frank, Shimoda, and Jinbo be granted summary judgment on Samonte's claims against them in their individual capacities for his failure to show any causal connection between them and his transfer.

---

hearing prior to his transfer. Finally, Samonte may not informally amend his action to assert this new claim now, more than sixteen months after he filed his Complaint, and four months after the date for amending the Complaint has passed.

V.   Defendants are Entitled to Qualified Immunity.

Defendants also assert, in the alternative, that they are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001), sets forth a two-step inquiry for determining whether qualified immunity applies. First, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged [must] show [that] the officer's conduct violated a constitutional right." *Id.* at 201. This prong of the *Saucier* inquiry "mirrors the substantive summary judgment decision on the merits." *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). "If no constitutional right would have been violated were the allegations established," the inquiry ends. *Saucier*, 533 U.S. at 201. If there appears to have been a constitutional violation, however, the second step is to determine whether the right in question was "clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id.; Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004).

As detailed above, the facts as alleged by Samonte, and countered by Defendants, do not show that Defendants violated Samonte's constitutional rights. *See Saucier*, 533 U.S. at 201. This court FINDS and RECOMMENDS that Defendants are entitled to qualified immunity for Samonte's claims against them.

VI.   <u>The Doe Defendants Are Also Dismissed.</u>

Samonte has never named the Doe Defendants in this action. This was apparently due, at least in part, to Defendants' failure to provide complete answers to Samonte's interrogatories. (*See* Doc. No. 83, "Order Granting in Part and Denying in Part Plaintiff's Motion to Compel Discover," entered Nov. 21, 2006.) Samonte identified one Doe Defendant as the HCF medical staff member who cleared him for transfer to Arizona. (Compl. at 4.) Defendants admit that the DPS medical officer who cleared Samonte for transfer was Dr. Salvatore Abbruzzese. (Reply, Kimoto Dec. ¶ 20.) Samonte has never given any other identifying details as to the other Doe Defendants.

The court has found that Defendants have proffered an unrebutted, legitimate correctional reason for Samonte's transfer, and that, therefore, there has been no retaliatory transfer or other violation of Samonte's constitutional rights by that transfer. As such, even if Samonte was now able to amend his complaint to name Dr. Abbruzzese or to identify any of the other Doe Defendants, this would not alter the court's conclusion that Defendants are entitled to summary judgment. Moreover, Samonte has presented no facts that support a conclusion that Samonte's medical clearance for transfer was in any way contraindicated by his physical condition. Accordingly, the court FINDS and RECOMMENDS that the Doe Defendants be

24

DISMISSED from this action, thus terminating the action.

## CONCLUSION

The court FINDS that Defendants are immune from suit for damages in their official capacities; that Samonte's remaining claim for prospective declaratory or injunctive relief be DISMISSED; that Samonte has failed to present a genuine issue of material fact showing that his transfer was not motivated by a legitimate correctional purpose; and that Samonte has failed to show Defendants' Frank, Shimoda, and Jinbo's personal involvement in the claims at issue; and RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED in its entirety, as to all Defendants.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, December 28, 2006.



_____
Kevin S.C. Chang
United States Magistrate Judge


SAMONTE v. BAUMAN, et al., CV 05-00507 HG/KSC; FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; dmp\ F&Rs 06\Samonte 05-507(MSJ 2)